# TYLER TERM, 1880.

## J. W. EICKS & J. C. MOORE v. A. A. COPELAND.

### (Case No. 881.)

1. FRAUD — FRAUDULENT ASSIGNMENT — EVIDENCE. — In a suit by an assignee under deed, for the benefit of creditors, against an attaching creditor, the petition set forth the deed of assignment, in which the following clause was found: "And my said trustee is hereby directed, when he shall have realized cash from said assets, in such sums as he may deem proper, that he pay out the same *pro rata* to the said creditors by installments or dividends, or he may retain the same until all the assets are converted, then pay out the whole, and close up the entire matter at once." On general demurrer to the petition, it was insisted that by reason of that clause the deed was void for fraud. *Held* —

     1. The clause in the deed is not of itself necessarily so inconsistent with fair dealing and the just rights of creditors, as to have required the court to declare the deed null and void.

     2. There was no error in overruling the demurrer and permitting the deed to be read in evidence.

     3. The fact that the deed authorized the assignee to sell for cash, or on credit, was but a badge of fraud, and did not *per se* render the deed void.

2. SAME — EVIDENCE. — In such a suit, the contest being virtually an effort by one creditor to subject property to his exclusive benefit as against all the other creditors, the exclusion of the evidence of the assignee (who

asserted no right in himself as against creditors), as to how many of the notes and accounts assigned he had collected at the time of trial, was not error.

3. ASSIGNMENT — LACHES. — A valid assignment for the benefit of creditors cannot be rendered invalid by the subsequent neglect of the assignee to properly discharge his duties under the assignment.

4. FRAUDULENT ASSIGNMENT — BADGE OF FRAUD. — A deed of assignment for the benefit of all the creditors failed to convey all the property of the debtor subject to execution.   *Held* —

    1. The failure to convey all the property, conceding the omission to be a badge of fraud, was not sufficient to entitle one of the creditors, for whose benefit in common with others the assignment was made, to have the deed declared absolutely void for his sole benefit.

5. DISTINGUISHED. — This case distinguished from D'Invernoise *v.* Leavitt, 23 Barb., 80.

6. CASES APPROVED. — Wilson *v.* Forsyth, 24 Barb., approved.

APPEAL from Smith.   Tried below before the Hon. John C. Robertson.

On the 18th of February, 1879, A. A. Copeland, as the assignee of M. C. Chiles, filed a suit in the district court of Smith county, Texas, against J. W. Eicks and J. C. Moore, for the value of goods to the amount of $1,165, for the interest thereon from the 2d day of January, 1879, and for $3,000 damages.

In the petition it is alleged that on the 2d day of January, 1879, M. C. Chiles executed to A. A. Copeland a deed of general assignment for the benefit of his creditors, conveying to him all his goods, wares and merchandise in the town of Troupe, and worth in that market $1,165; also his books, papers, notes and accounts, worth $522; that J. W. Eicks & Co. caused to be issued a writ of attachment against M. C. Chiles, and procured J. C. Moore, a constable, to levy the same on the goods described in the deed of assignment and take possession thereof; that they were reasonably worth in market the sum of $1,165; that A. A. Copeland, as assignee, is entitled to recover the market value thereof, and interest thereon at eight per cent. per annum from the 2d day of January, 1879; that by the wrongful seizure of the goods, and the closing up of the

storehouse in which they were kept, A. A. Copeland, as-
signee, was prevented from collecting the notes and accounts
conveyed to him by the assignment, most of which were col-
lectible, and thereby damaged in the sum of $3,000; and that
he is entitled to recover that amount as damages. The deed
of assignment was attached to the petition as an exhibit, and
made a part of it.

On the 14th of March, 1879, Eicks filed a plea to the juris-
diction; a motion to quash the service of the citation as to
himself; and at the same time the defendants, Eicks and Moore,
filed a general and special exception to the petition and an
answer to the merits.

The question raised by the general exception to the petition
was, that the assignee, Copeland, had no right of action
against Eicks and Moore, because the deed of assignment
under which he claimed the property attached was void for
fraud expressed on its face, in that it provided that the as-
signee should have full power to sell the property attached at
public or private sale, for cash or on short acceptances; and in
that it provided that the assignee, " when he shall have received
cash from the assets of the assignor in such sums as he may
deem proper, may pay out the same *pro rata* to the creditors
by installments or dividends, or that he may retain the same
until all the assets are converted, and then pay out the whole
and close up the entire business at once."

Eicks and Moore stated in their answer to the merits, that
on the day the deed of assignment purports to have been exe-
cuted, the assignor, M. C. Chiles, was hopelessly and noto-
riously insolvent, and had been, for several days previous
thereto, engaged in fraudulently transferring and secreting his
property, with the intent and for the purpose of hindering,
delaying and defrauding his creditors; and that the assignee,
Copeland, who was his clerk during the time, had co-operated
with him in so doing.

The court overruled the exceptions of J. W. Eicks and J.
C. Moore except the special exceptions to that part of the

petition in which damages are claimed for and on account of the failure of the assignee to collect the notes and accounts specified in the assignment by reason of the attachment, and the assignee, by his counsel, then renounced his claim of damages on that account.

Verdict and judgment for appellee.

Chiles and Copeland both testified to the fact that the deed was made in good faith. Much testimony was heard strongly conflicting in regard to almost every fact. The charge of the court is too lengthy for insertion. The following is the most material portion of it:

\* \* \* "Fraud may be inferred from the stipulations of the deed itself, or from facts proven outside of the deed itself, or from both. If the deed contains any provision expressly intended to hinder, delay or defraud creditors, it would be void. Or if the facts adduced in evidence outside of the deed, together with all the provisions in the deed, satisfy the jury that the deed was made with intent to hinder, delay or defraud creditors, it would be void. If the terms of the deed itself would have the effect to hinder, delay or defraud the creditors of M. C. Chiles of or from what they are or may be entitled to, and the said Chiles executed the same with intent that it should have that effect, it would in law be void, and by it no title passed to A. A. Copeland, and he would not be entitled to recover in this action. Likewise, if the necessary effect and operation of the instrument be to hinder, delay or defraud creditors, the legal presumption is that it was made for that purpose; as it is a legal principle that every one is presumed to intend the results which flow from his voluntary acts; but such presumption may be explained by the testimony. The effect of said deed upon the creditors of Chiles, and the intent with which it was executed, are questions of fact, of which the jury are exclusive judges under the evidence.

"The defendants in their answer allege, in substance, that Chiles and Copeland, the plaintiffs in this suit, conceived, concocted and carried into effect their scheme to hinder, delay

and defraud creditors of Chiles; that the same was done in bad faith, with said intent, and not in good faith; that all of Chiles' stock of goods was not conveyed by the deed, but other and a large amount of goods were sold at various prices, and converted into money, and some were concealed and fraudulently disposed of, and not brought into the assignment. These allegations on questions of fact, if proven, constitute badges of fraud.   *   *   *   You are to give them such weight with the other testimony as you in your judgment shall determine, on the question of the intent of Chiles to hinder, delay or defraud his creditors. If in making the deed to Copeland, Chiles intended to hinder, delay or defraud his creditors, the deed would be void, notwithstanding Copeland was ignorant of such intention, and in no way participated in the fraud.

"If you find from the evidence that the motive of Chiles in executing the deed was to pay his honest debts, by a general and equal distribution of all his property liable for his debts, and there is no proof of any concealment of any, or any secretly disposed of, covetously and guilefully out of the assignment, but the assignment was made in good faith, then, although the effect of the assignment may necessarily have been to delay the creditors, but not unnecessarily, the deed would be valid. On the other hand, if you find from the testimony that it was the intention of Chiles that the title should pass to Copeland for the purposes specified in the trust, but the influencing motive in making the transfer to Copeland was to defeat entirely or to hinder and delay the collection of the debts held by the creditors of Chiles, it is in law made void by reason of the fraudulent intent with which it was executed; and if you find this to be the case, you will find for the defendant.   *   *   *   Creditors have a right to demand of a trustee, so soon as cash has been realized from a sale of the trust property, without hindrance or unnecessary delay, that their debts should be paid; and any terms in the deed of trust

which vary from the plain, direct and immediate application of the effects of the debtor to the payment of his creditors are badges of fraud." *   *   *

*Tignal W. Jones* for appellants. .

I. The provision in the deed of assignment that empowers the assignee, when he shall have realized cash from the assets of the assignor in such sums as he may deem proper, to pay out the same *pro. rata* to the creditors by installments or dividends, or to retain the same until all the assets are converted, and then to pay out the whole of the assets, is an expression of the fraudulent intent of the grantor, in the deed of assignment itself, and renders it void as to creditors. Bump on Fraudulent Conveyances, 418. " An assignment will also be rendered void by a provision which allows the assignee to withhold the division and distribution of the assets for any length of time which he, in his discretion, may think proper." D'Invernois *v.* Leavitt, 23 Barb., 64; Grover *v.* Wakeman, 11 Wend., 187.

II. The right of action in the assignee in this case is dependent on the validity of the assignment, and if the provision in the deed referred to expresses a fraudulent intent in the assignor in the execution of the deed, and the deed is thereby rendered void, the district court ought to have sustained the general demurrer to the petition which raises the question as to the plaintiffs' right of action, and declared the deed void for the fraudulent intent expressed on its face.   In reference to a general assignment, it may be safely assumed, as it is believed that the court may pass upon its validity and declare it void or inoperative, as to creditors, when the fraudulent intent is expressed or admitted.   Baldwin *v.* Peet, 22 Tex., 720; Bailey *v.* Mills, 27 Tex., 434; Vanhook *v.* Walton, 28 Tex., 59.

III. Fraud in a deed is expressed or admitted whenever it appears from the entire deed, or some particular provision in it, that the necessary effect of the deed is to hinder, delay or

defraud creditors; and it is then a question of law to be decided by the court. J. Y. H. Scott, Assignee, *v.* A. N. Alfred, 3 Tex. Law Jour., 593; Bump on Fraudulent Conveyances, 70, 71; Burrill on Assignments, 3d ed., § 343, p. 476; Schuman *v.* Peddicord (Court of Appeals of Maryland, 1879), The Reporter, vol. 7, p. 563.

IV. The court erred in overruling defendants' objection to the reading of the deed of assignment in evidence to the jury, in that the deed was illegal testimony, because of the provision therein which authorized the assignee to sell for cash or on short credit, and because of the provision therein in reference to the distribution of the assets of the assignor among his creditors, rendering the deed of assignment fraudulent and void on its face. Bailey *v.* Mills, 27 Tex., 434; Vanhook *v.* Walton, 28 Tex., 59; Peiser *v.* Peticolas, 50 Tex., 646; Bump on Fraud. Conveyances, 70, 71; Burrill on Assignments, 3d ed., § 343, p. 746. See, also, Schuman *v.* Peddicord (Court of Appeals of Maryland, 1879), The Reporter, vol. 7, p. 563; Bump on Fraud. Conveyances, 418; D'Invernois *v.* Leavitt, 23 Barb., 64; Grover *v.* Wakeman, 11 Wend., 187.

V. The court erred in refusing to permit defendants to ask the plaintiff, A. A. Copeland, to state how many of the notes and accounts transferred to him by the assignment he had collected up to the date of the trial of the case, in that the answer of witness might have rebutted the explanation of the provision in the deed of assignment in reference to the distribution of the assets of the assignor by the assignee, and might have tended to show a fraudulent combination between the assignor and assignee to defraud the creditors of the former, by its appearing that the assignee had failed to collect the debts that were collectible, and would, therefore, have been legal. Bump on Fraudulent Conveyances, 363–366; Burrill on Assignments, 3d ed., § 351, p. 488. The fourth assignment is waived.

Counsel argued at length the insufficiency of the evidence to sustain the judgment.

*W. S. Herendon* for appellee.

I. The court may pass upon the validity of a deed of assignment and declare it void or inoperative as to creditors where the fraudulent intent is expressed or admitted, or where it contains a reservation of interest to the assignor inconsistent with the object of the conveyance, or where the deed is wanting in some essential quality which renders it invalid as a legal consequence. Baldwin *v.* Peet, 22 Tex., 716–721; with cases cited; Bump on Fraudulent Conveyances, 2d ed., 384, 385, and cases cited; Burrill on Assignment, 3d ed., 22, 23, note 3, and cases cited.

II. An assignment cannot be defeated by showing that the assignee has abused his trust; nor will an assignment be affected, if valid in its creation, by subsequent fraudulent or illegal acts of the parties to it. The evidence sought to be elicited was clearly to prove by the assignee how he had executed the trust, whether vigilantly and faithfully, or negligently. See Burrill on Assignments, 2d ed., sec. 351, pp. 487, 488, and cases cited.

III. It is not a badge of fraud for provision to be made in the deed of assignment, to authorize the assignee to wait until the trust is settled or until money is realized, where there are claims not due to be collected by the assignee. Baldwin *v.* Peet, 22 Tex., 720.

IV. The failure of an assignor to embrace all property subject to execution in the deed of assignment, is neither a badge of fraud nor fraudulent as against creditors, because it is still subject to their debts. The evidence on this point was conflicting and the jury settled it against appellants. Baldwin *v.* Peet, 22 Tex., 716.

V. The jury are the sole judges of the facts; and where there is a conflict of evidence, as there was upon all these points, it is the province of the jury to settle the question of facts; when settled, it will not be disturbed by this court unless it is clearly and manifestly wrong and oppressive.

Bonner, Associate Justice.—The deed of assignment under which appellee Copeland, plaintiff below, claimed the property in controversy was made part of his petition.

Appellants Eicks & Co., defendants below, contend that this deed was void upon its face by reason of the following clause: " And my said trustee is hereby directed, when he shall have realized cash from said assets in such sums as he may deem proper, that he pay out the same *pro rata* to the said creditors by installments or dividends, or he may retain the same until all the assets are converted, then pay out the whole and close up the entire matter at once."

Appellants assign as error the refusal of the court below, under their demurrer, to decide as a question of law that the deed was void. The same question was also raised by their objection to its introduction in evidence.

1. It should be borne in mind in the examination of many of the decisions from other states upon the question of fraudulent conveyances, that they were rendered in suits in equity, in which the whole case, both upon the law and the facts, was tried before a chancellor without a jury.

It has been repeatedly decided by this court, that where a debtor, by written instrument, has conveyed or incumbered his property, and the same is sought to be avoided by a creditor because made in fraud of his rights, that if there is apparent upon the face of the instrument by its express terms, or as the indisputable legal presumption therefrom, either such actual fraud in fact or such constructive fraud in law as should avoid it, then it is the duty of the court to so construe the instrument and declare its legal effect; otherwise it is a question of intention to be decided by the jury. Baldwin *v.* Peet, 22 Tex., 708; Bailey *v.* Mills, 27 Tex., 434; Van Hook *v.* Walton, 28 Tex., 59; Peiser *v.* Peticolas, 50 Tex., 638; Crow *v.* R. R. Co. Bank, 52 Tex., 362; Scott *v.* Alford, *ante,* p. 82.

We are of opinion that the clause under consideration is not of itself necessarily so inconsistent with fair dealing and the just rights of creditors as to constitute such fraud *per se,* as

would have authorized the court, as to them, to declare the deed null and void; and hence that the court did not err in overruling the demurrer to the petition, or in permitting the deed to be read in evidence.

That the assignee had the right to sell for cash or on a credit, was but a badge of fraud.    Baldwin *v.* Peet, 22 Tex., 708.

It might in many cases be both expensive and quite inconvenient to require an assignee to distribute among several creditors the proceeds of the sales of such articles as are embraced in this assignment, as they might come into his hands from time to time, and often, when the property would be insufficient to pay in full the claims, he could not until all the assets had been converted into money, and the costs and expenses paid, determine without risk the proper *pro rata* to each creditor.    In some cases the assets might readily be converted into money, and final distribution made at an early day; in others it might be necessarily longer delayed.    Hence, under the circumstances of this particular case, a sound discretion might often well be confided to the assignee, either to pay in installments or to await until ready for final distribution.    Although any improper delay on the part of the assignee might render him liable in damages, or subject him to removal at the suit of the creditors, it would not follow that in this possible dereliction of duty the deed itself would be void.    Burrill on Assignments, § 214.    The limitation upon the discretion of the assignee in this case is quite different from that in D'Invernois *v.* Leavitt, 23 Barb., 80, relied on by counsel for appellants, which gave the assignee the right to withhold the distribution, not until the assets were converted into money, but for any length of time which he in his discretion might think proper.    This case would also be very different had the property been conveyed to Copeland absolutely, ostensibly for his own use and benefit, and he was withholding its sale or the collection of the proceeds for the benefit of Chiles and in fraud of his creditors.

As presented, however, Chiles, so far from being benefited,

would be injured by delay upon the part of Copeland, as in the meanwhile interest would be running against him, and the assets which he had set apart for the payment of his indebtedness be subject to waste.

2. Under the deed of assignment, the property was conveyed by Chiles in trust for his creditors generally, and he parted with both the title and control. This, then, is virtually a contest by which one creditor seeks, as against all the other creditors, to subject the property exclusively to his own benefit, and in which the debtor, Chiles, is but incidentally interested. Thus considered, the testimony sought to be elicited from the assignee, Copeland, as to how many of the notes and accounts he had collected to the date of trial, was immaterial to the true issue between the real parties, however material it might have been had Copeland in his own right fraudulently claimed it as against the creditors; and hence it was not error to exclude this testimony.

If the assignment for the creditors was valid otherwise, it could not have been rendered invalid by the subsequent neglect of the assignee, Copeland, inconsistent with the proper discharge of his duties. Burrill on Assignments, § 351.

3. The fifth, sixth and seventh assigned errors relate to the refusal of the court to give certain special charges asked by defendants.

The third special charge asked, was to the effect that if the evidence showed that Chiles had failed to place all his property subject to execution in the deed of assignment, that this would render it void as to creditors.

If it be conceded that it was a badge of fraud on the part of Chiles that his deed of assignment may not have conveyed all his property subject to execution, this would not be sufficient to entitle one of the several creditors for whose general benefit the assignment was made, to have it declared absolutely void for his sole benefit. Wilson v. Forsyth, 24 Barb., 105; Bump on Fraud. Con., 336, 371.

The remaining property not embraced in the assignment

would not be affected by it, and it could still, as was done in this case, be levied upon. The court, however, instructed the jury that if a portion of the property of Chiles was withheld from the assignment, that this was a badge of fraud to be considered by them.

Upon a careful comparison, we are of opinion that the general charge of the court embraced substantially the other special charges asked, and that it was not error to refuse to repeat them.

4. Chiles and Copeland both testified to the good faith of the transaction, and although there may have been many badges of fraud surrounding it, and which, in a contest between the creditor and Copeland in his individual capacity, might have resulted in a different verdict, yet, under the charge of the court and the conflicting testimony in the case, we cannot, by well established rules of practice, say that this conflicting testimony so greatly preponderates in favor of appellants as to warrant us in deciding that the court erred in not granting a new trial.

AFFIRMED.

[Opinion delivered October 12, 1880.]